# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONICO J. QUIROGA, III,<br><br>   Plaintiff,<br><br>   v.<br><br>DOCTOR HASTA,<br><br>   Defendant. | Case No. 1:15-cv-01871-LJO-JLT (PC)<br><br>**FINDINGS AND RECOMMENDATION TO GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. 65) AND TO DENY PLAINTIFF'S MOTION TO DENY SUMMARY JUDGMENT SETTLEMENT (Doc. 64)**<br><br>**OBJECTIONS DUE WITHIN 14 DAYS** |

**I.   Procedural History**

Plaintiff is proceeding on a claim that the medical care he received while a pretrial detainee at Kern County Lerdo Max-Med Security Facility in Bakersfield, California was deficient. The allegations in Plaintiff's first cause of action were found to state a cognizable claim against Defendant, Dr. Hasta, for denial of Plaintiff's pain medication as prescribed by his prior treating physicians in deliberate indifference to his chronic pain. (Docs. 23, 25.)

Defendant has filed a motion for summary judgment contending that (1) Plaintiff's claim for cruel and unusual punishment brought under the Eighth Amendment fails because Plaintiff was a pretrial detainee at the time he received medical care from Defendant; (2) Plaintiff's claim under the Fourteenth Amendment fails because Defendant met the standard of care in treating plaintiff, and there is no evidence that he was deliberately indifferent to any medical need; and (3) Plaintiff's request for injunctive relief fails because he is no longer a detainee at the facility and is

1

no longer being cared for by Defendant. (Doc. 65.)

Plaintiff was provided with timely notice of the requirements for opposing a motion for summary judgment in an order filed on December 13, 2017. *Woods v. Carey*, Nos. 09-15548, 09-16113, 2012 WL 2626912 (9th Cir. Jul. 6, 2012), *Wyatt v. Terhune*, 315 F.3d 1108 (9th Cir. 2003), *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998), and *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988). Plaintiff filed an opposition (Doc. 67), and Defendant filed a reply (Doc. 68). The motion is thus deemed submitted. L.R. 230 (*l*). For the reasons discussed below, the Court finds that Defendant's evidence establishes that there is no genuine issues of material fact, which Plaintiff does not overcome, and Defendant's motion should be **GRANTED.**

## II.     Plaintiff's Allegations

Plaintiff's claim against Defendant is based on allegations that, when Plaintiff arrived at Lerdo Max-Med, Plaintiff had 9 screws and a 6-1/2 inch plate on his left radius, the pain from which caused him to be on chronic pain management for which doctors at Sagebrush Clinic in Bakersfield, California had prescribed 200 mg of Tramadol for pain and 2400 mg of Gabotine for neuropathy. (Doc. 20, pp. 4-5.) Plaintiff alleges that, after several months, Defendant began denying Plaintiff those medications referring to them as "candy." (*Id.*) Plaintiff objected and indicated that he needed them for his chronic pain condition, but on several occasions Defendant refused to continue Plaintiff's prescriptions and thereafter only gave them to Plaintiff for 10 days at a time which would thereafter take 5-7 days to refill. (*Id.*)

The Court found these allegations to state a cognizable claim against Defendant for deliberate indifference to Plaintiff's serious medical need based on *Hamilton v. Endell*, 981 F.2d 1062, 1066 (9th Cir. 1992) (finding Eighth Amendment subjective deliberate indifference where prison officials "deliberately ignore the express orders of a prisoner's prior physician for reasons unrelated to the medical needs of the prisoner") *overruled in part on other grounds by Saucier v Katz*, 566 U.S. 194 (2001); *see also Snow v. McDaniel*, 681 F.3d 978, 986 (9th Cir. 2012) (concluding that reliance on "non-specialized" medical conclusions may constitute Eighth Amendment subjective deliberate indifference to a plaintiff's medical needs), overruled on other grounds by *Peralta*, 744 F.3d 1076; *Wakefield v. Thompson*, 177 F.3d 1160, 1165 (9th Cir. 1999)

("[A]llegations that a prison official has ignored the instructions of a prisoner's treating physician are sufficient to state a claim for deliberate indifference."). (*See* Docs. 23, 25.)

### III. Summary Judgment Standard

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Washington Mutual Inc. v. U.S.*, 636 F.3d 1207, 1216 (9th Cir. 2011). An issue of fact is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, while a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Wool v. Tandem Computers, Inc.*, 818 F.2d 1422, 1436 (9th Cir. 1987). The Court determines only whether there is a genuine issue for trial and in doing so, it must liberally construe Plaintiff's filings because he is a *pro se* prisoner. *Thomas v. Ponder*, 611 F3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

In addition, Rule 56 allows a court to grant summary adjudication, or partial summary judgment, when there is no genuine issue of material fact as to a particular claim or portion of that claim. Fed. R. Civ. P. 56(a); *see also Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 769 n.3 (9th Cir. 1981) ("Rule 56 authorizes a summary adjudication that will often fall short of a final determination, even of a single claim . . .") (internal quotation marks and citation omitted). The standards that apply on a motion for summary judgment and a motion for summary adjudication are the same. *See* Fed. R. Civ. P. 56 (a), (c); *Mora v. Chem-Tronics*, 16 F.Supp.2d 1192, 1200 (S.D. Cal. 1998).

Each party's position must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); *accord Simmons v. Navajo County, Ariz.,* 609 F.3d 1011, 1017 (9th Cir. 2010).

Defendant does not bear the burden of proof at trial and, in moving for summary judgment, they need only prove an absence of evidence to support Plaintiff's case. *In re Oracle Corp. Securities Litigation*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If Defendant meets his initial burden, the burden then shifts to Plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp.,* 627 F.3d at 387 (citing *Celotex Corp.,* 477 U.S. at 323). This requires Plaintiff to "show more than the mere existence of a scintilla of evidence." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). An issue of fact is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, while a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248; *Wool v. Tandem Computers, Inc.*, 818 F.2d 1422, 1436 (9th Cir. 1987).

In judging the evidence at the summary judgment stage, the Court may not make credibility determinations or weigh conflicting evidence, *Soremekun v. Thrifty Payless Inc.,* 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted), *cert. denied*, 132 S.Ct. 1566 (2012). Inferences, however, are not drawn out of the air; the nonmoving party must produce a factual predicate from which the inference may reasonably be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987).

## IV. Discussion and Analysis

### A. Defendant's Undisputed Statements of Fact[1]

Defendant's evidence shows that in October of 2010, Plaintiff was a prisoner at Kern Valley State Prison when he fell playing basketball and broke his ann. (Plntf. Depo., 27:12-28:18.) Plaintiff had surgery at San Joaquin Hospital in October of 2010 and ten pins were placed

---

[1] Disputes of fact shown by Plaintiff's evidence are delineated in the discussion of his opposition.

4

in his arm. (*Id.*, at 27:14-25.)

On August 7, 2015, after release from prison, Plaintiff presented to Kern Medical Center's Family Practice Clinic to establish a primary care physician, and saw Dr. John P. Miller. (Exh. B, p. 10.) Plaintiff indicated that he had a history of injury to his left wrist for which he developed neuropathic pain, and was taking Neurontin and Tramadol with good symptom relief. (*Id.* p. 10.) Plaintiff requested an x-ray to see if the hardware could be removed. (*Id.*) Dr. Miller refilled Plaintiff's medications and ordered an x-ray of his left wrist. (*Id.*, p. 11.)

On August 12, 2015, Plaintiff presented to the Orthopedic Clinic at Kern Medical Center and requested that his hardware be removed. (Exh. B pp. 12-15.) Plaintiff saw Dr. Michael Eagen, who noted that x-rays showed a healed distal radius fracture with an intact volar plate, and that a few of the distal most screws appeared to be protruding slightly from the dorosal cortex. (*Id.*, p. 14.) Dr. Eagen told Plaintiff that hardware removal was not guaranteed to resolve his symptoms and would expose him to risks such as injury to tendons, nerves and blood vessels. (*Id.*) Plaintiff indicated he would like a pain management referral at that time and was advised that would need to be ordered by his primary care doctor. (*Id.*)

Plaintiff was rearrested and taken to Lerdo Max-Med on September 25, 2015. (Exh. C.) Plaintiff had a medical screening that day and requested evaluation for pain meds. (Exh. D, p. 30.) Plaintiff was seen several times by either a nurse or nurse practitioner and once, on September 28, 2015, by Dr. Mostofi, before he saw Defendant for the first time on January 14, 2016. (Def. Decl. ¶4; Exh. D pp. 23-29.)

When Defendant saw Plaintiff on January 14, 2016, he was concerned about Plaintiff's chronic use of narcotic pain medication, and switched him to Naprosyn and Flexeril. (Def. Decl. ¶4; Exh. D pp. 7, 23.) Defendant was aware that Plaintiff wanted to have his hardware in his arm removed and submitted a referral to the Orthopedic Clinic at Kern Medical Center that same day. (Def. Decl. ¶4; Exh. D p. 23.)

Defendant next saw Plaintiff on February 1, 2016. (Def. Decl. ¶5; Exh. D p. 19.) He discussed with Plaintiff the results of his x-ray, which had been taken on January 6, 2016 at Kern Medical Center, and showed hardware overlying a healed angulated and displaced fracture of the

distal radius diaphysis. (Def. Decl. ¶5; Exh. D pp. 19, 36.) Plaintiff demanded Ultram at that time, and swore at Defendant and the medical staff. Plaintiff left in custody while threatening and cursing staff and Defendant. (Def. Decl. ¶5; Exh. D p. 19.)

Defendant next saw Plaintiff on March 17, 2016, and refilled Plaintiff's pain medications. (Def. Decl. ¶6; Exh. D p. 16.) Defendant ordered Tramadol 50 mg for five days and Indocin 50 mg as need for pain for 3 weeks as well as Prilosec to alleviate any stomach problems caused by the pain medication. (Def. Decl. ¶6; Exh. D pp. 5, 16.)

On March 23, 2016, Plaintiff was brought to the Orthopedic Clinic and he once again saw Dr. Eagen. (Exh. B pp. 15-17.) Plaintiff again requested hardware removal indicating it was bothering him a great deal. (Exh. B, p. 16.) Dr. Eagen reviewed Plaintiff's x-rays which showed a healed radius fracture with intact hardware. (Exh. B p. 16.) Dr. Eagen placed a surgical authorization request and ordered Plaintiff back in four weeks to schedule the surgery. (Exh. B p. 16.) Plaintiff returned on April 20, 2016 and the surgery was scheduled for May 6, 2016, when it was performed by Dr. Eagen without complication. (Exh. B pp. 18-20, 35-37.)

Defendant did not see Plaintiff again after March 17, 2016, but on April 4, 2016, Defendant renewed Plaintiff's prescriptions for Indocin 50 mg and Prilosec, and on April 12, 2016, renewed the Indocin and Prilosec prescriptions in addition to ordering Tramadol 50 mg. (Def Decl. ¶7; Exh. D p. 4.) Defendant renewed Plaintiff's Tramadol prescription on May 2, 2016. (Def. Decl. ¶7; Exh. D p. 4.)

On May 11, 2016, Defendant wrote a prescription for two weeks of Ultram, and on May 15, 2016, he renewed Plaintiff's prescription for Indocin 50 mg and Prilosec. (Def. Decl. ¶8; Exh. D p. 3.) On May 23, 2016, Defendant wrote Plaintiff a prescription for Tramadol 50 mg for two weeks. (Def Decl. ¶8; Exh. D p. 3.) That was the extent of Defendant's involvement in Plaintiff's care and treatment. (Def. Decl. at ¶8; Exh. D.)

### 1. **Defendant's Motion**

Defendant presents three arguments upon which he seeks summary judgment: (1) that Plaintiff cannot proceed under the Eighth Amendment since he was a pretrial detainee at all times that he was under Defendant's care (Doc. 65, p. 11); (2) that Plaintiff cannot establish a claim

under the Fourteenth Amendment (*id.*, pp. 11-14); and (3) that Plaintiff's injunctive claim relief is moot (*id.*, p. 14).

### a. <u>**Deliberate Indifference to Serious Medical Needs**</u>

Subsequent to the screening of this action, several cases have been published by the Ninth Circuit Court of Appeals which define and clarify the standards for medical claims raised by pretrial detainees. "Inmates who sue prison officials for injuries suffered while in custody may do so under the Eighth Amendment's Cruel and Unusual Punishment Clause or, if not yet convicted, under the Fourteenth Amendment's Due Process Clause." *Castro v. County of Los Angeles*, 833 F.3d 1060, 1067-68 (9th Cir. 2016) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979) (holding that, under the Due Process Clause, a detainee may not be punished prior to conviction)). "[E]ven though pretrial detainees[sic] claims 'arise under the due process clause [of the Fourteenth Amendment], the [E]ighth [A]mendment guarantees provide a *minimum standard of care* for determining rights as a pretrial detainee, including rights ... to medical care.' " *Carnell v. Grimm*, 74 F.3d 977, 979 (9th Cir. 1996) (quoting *Jones v. Johnson*, 781 F.2d 769, 771 (9th Cir. 1986) (emphasis in *Carnell*)).

Under both the Fourteenth and Eighth Amendments, "the plaintiff must show that the prison officials acted with 'deliberate indifference.'" *Castro*, at 1068. Defendant's argument that Plaintiff cannot proceed against Dr. Hasta under the Eighth Amendment because he was not a prisoner, but a pretrial detainee when he was under Dr. Hasta's care is erroneous. It is true that, because Plaintiff was a pretrial detainee, his medical claim against Dr. Hasta is based on his rights under the more lenient standards of the Fourteenth Amendment. However, when there is no applicable Fourteenth Amendment standard (which is not uncommon), the standards under the Eighth Amendment (which are far more numerous) provide the minimum threshold of Plaintiff's rights. Thus, Defendant's motion to dismiss Plaintiff's claims to the extent they are brought under the Eighth Amendment merely because Plaintiff was a pretrial detainee at the time in question must be denied. However, as discussed below, Defendant shows an absence of evidence to support Plaintiff's deliberate indifference claim against him. *In re Oracle*, 627 F.3d at 387.

The Ninth Circuit recently held that medical claims for pretrial detainees against

individual defendants are evaluated under the Fourteenth Amendment by an objective, not subjective, deliberate indifference standard. *Gordon v. County of Orange,* 888 F.3d 1118, 1124-25 (9th Cir. April 30, 2018). The elements of a pretrial detainee's medical care claim against an individual defendant under the due process clause of the Fourteenth Amendment are: (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved -- making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries. *Id.*, at 1125.

"With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily 'turn[ ] on the facts and circumstances of each particular case.' " *Castro*, at 1071 (quoting *Kingsley v. Hendrickson*, --- U.S. ---, 135 S.Ct. 2466, 2473 (2015); *Graham v. Connor,* 490 U.S. 386, 396 (1989)). The " 'mere lack of due care by a state official' does not deprive an individual of life, liberty, or property under the Fourteenth Amendment." *Id*. (quoting *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986)). "Thus, the plaintiff must 'prove more than negligence but less than subjective intent -- something akin to reckless disregard.'" *Gordon*, at 1125, (citing *Daniels*, 474 U.S. at 330-31).

### b. **Defendant's Argument**

Defendant argues that Plaintiff is unable to establish that he was deliberately indifferent to Plaintiff's medical needs. (Doc. 65, p. 12.) Defendant contends that Plaintiff characterizes his claim against Defendant as one of "negligence" which is insufficient to constitute a violation of the Fourteenth Amendment. (*Id.*) Defendant further contends that no evidence exists to suggest that Defendant was negligent. (*Id.*) Specifically, Defendant points to the expert opinion he submitted of Dr. Leslie Martin, the care and treatment Defendant provided to Plaintiff was appropriate and at all times within the standard of care. (*Id.* (citing Martin, M.D. Dec. at ¶16).) Defendant contends that he performed appropriate evaluations and ordered appropriate medications and that it was appropriate for him to initially start Plaintiff on Naprosyn and Flexeril

8

out of concern about chronic narcotic pain medication use. (*Id.*)

Defendant further asserts that Plaintiff did not have an absolute right to be prescribed Tramadol or Neurontin (gabapentin) for his pain management. (Doc. 65, p. 12 (citing Martin, M.D. Decl. at ¶17.) Defendant's evidence shows that the standard of care,[2] which is a stricter standard than reckless disregard, dictates that inmates not receive chronic pain medications while in jail unless there is a clearly substantiated history of established care with an outside M.D., who has routinely and consistently prescribed the pain medications. (*Id.*) Here, prior to his subject detainment, Defendant's evidence shows that Plaintiff had only gone to the primary care physician once, and had received one prescription for pain medication; although he asked to see a pain management specialist, Plaintiff did not see one before he was reincarcerated. (*Id.*) Thus, Plaintiff did not have an established history with proven follow up visits to a pain management physician sufficient to warrant ongoing prescriptions for Tramadol and Neurontin (gabapentin) while detained pretrial. (*Id.*)

The Court finds that Defendant has met his burden to demonstrate the absence of a genuine issue of material fact. The burden therefore shifts to Plaintiff to establish that a genuine issue as to any material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). Plaintiff may not rely upon the mere allegations or denials of his pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of his contention that the dispute exists. Fed. R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 586 n.11; *First Nat'l Bank,* 391 U.S. at 289; *Strong v. France*, 474

---

[2] Under California law, "[t]he elements of a medical malpractice claim are (1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and resulting injury; and (4) actual loss or damage resulting from the professional's negligence." *Avivi v. Centro Medico Urgente Medical Center*, 159 Cal.App.4th 463, 468, n. 2, 71 Cal.Rptr.3d 707 (Ct.App.2008) (internal quotations and citation omitted); Johnson v. Superior Court, 143 Cal.App.4th 297, 305, 49 Cal.Rptr.3d 52 (2006).

Medical professionals are negligent if they fail to use the level of skill, knowledge, and care in diagnosis and treatment that other reasonably careful medical professional would use in the same or similar circumstances. This level of skill, knowledge, and care is sometimes referred to as "the standard of care" and can usually only be opined by other medical professionals. *Landeros v. Flood*, 17 Cal.3d 399, 408 (1976); *see also Brown v. Colm*, 11 Cal.3d 639, 642B643 (1974); *Mann v. Cracchiolo*, (1985) 38 Cal.3d 18, 36; and Judicial Council of California Civil Jury Instruction 500, Summer 2008 Supplement Instruction.

F.2d 747, 749 (9th Cir. 1973).

                **c.**        **Plaintiff's Opposition**

In his opposition, Plaintiff argues that, a medical condition need not be life-threatening to constitute a serious medical need if it could result in unnecessary and wanton infliction of pain. (Doc. 67, p. 3.) Plaintiff further argues that the treatment of chronic pain may rise to the level of deliberate indifference as does the withholding of medication for injury and pain. (*Id.*) Plaintiff contends that from January through May of 2016, his pain medications were only renewed after he filed inmate grievances when they should have been automatically refilled. (*Id.*, p. 4.) Because of this, Plaintiff states that he went through withdrawals because the pain medications were "synthetic opiod [sic]." (*Id.*)[3]

Plaintiff admits as true, Defendant's facts that: he fell in October of 2010 and broke his arm (Doc. 67, p. 64, #2); that he had surgery that same month in which 10 pins were placed in his arm (*id.*, #3); and that, on August 7, 2015, after he was released from custody, Plaintiff say Dr. Miller who noted that good pain relief was achieved with Neurontin and Tramadol, (*id.*, #4). Plaintiff admits he was rearrested and taken to Lerdo Max-Med on September 25, 2015 and was medically screened that same day. (*Id.*, p. 67, #12-13.) Plaintiff admits that Defendant examined him only three times -- January 14, 2016, February 1, 2016, and March 17, 2016. (*Id.*, pp. 68-70, #14, 17, 20.)

Plaintiff admits that the first time Defendant saw him, Defendant was concerned about Plaintiff's chronic use of narcotic pain medications and switched Plaintiff to Naprosyn and Flexeril. (Doc. 67, p. 68, #15.) That same day, Defendant referred Plaintiff to the Orthopedic Clinic at Kern Medical Center because Plaintiff wanted to have the hardware in his arm removed. (*Id.*, p. 69, #16.) While Plaintiff disputes that he cursed at Defendant and medical staff the second time Defendant saw him, he admits they discussed the x-ray results from Kern Medical

---

[3] Plaintiff also complains that x-rays revealed damage to his "lower back L-5 and deterioration due to injury sustained the day booked into Downtown County Jail that took 6 months to diagnose due to delayed medical, . . ." (Doc. 67, p. 5.) However, Plaintiff is not proceeding on any such claims in this action and may not may not now expand the scope of this litigation via his opposition to Defendant's motion for summary judgment. *See Gilmore v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004).

Center during that visit. (*Id.*, pp. 69-70, #17-19.) Plaintiff also admits that the last time he saw Defendant was March 17, 2016, and Defendant re-filled Plaintiff's pain medications, gave Plaintiff a prescription for Indocin, and a 5-day prescription of Tramadol as well as a prescription for Prilosec to alleviate any stomach problems caused by the pain medications. (*Id.*, p. 70, #21.) Plaintiff concedes that, thereafter, he was seen and treated by Dr. Eagen who performed surgery to remove the pins in his arm on May 6, 2016, and that, despite Plaintiff's seeing Dr. Eagen, but that Defendant renewed Plaintiff's prescriptions for Indocin and Prilosec on April 4, 2016, and Tramadol on April 12, 2016. (*Id.*, pp. 70-72, #22-28.)

Plaintiff was allowed to proceed in this action on allegations that, because of the hardware in his left arm, he had been under chronic pain management for which doctors at Sagebrush Clinic had prescribed 200 mg of Tramadol for pain and "2400 mg of Gabotine[4]" for neuropathy. (Doc. 25, O adopt; Doc. 23, F&R screen, pp. 5-6 (citing Doc. 20, pp. 4-5).) Plaintiff also alleged that, after several months, Defendant denied Plaintiff those medications calling them "candy" to which Plaintiff objected that he needed them for his chronic pain, and when Defendant refilled them, he only did so for 10 days at a time, after which it took 5-7 days to actually obtain the medication. (*Id.*)

However, Plaintiff's evidence does not show that he had been on Tramadol and Gabapentin for "several months" which Defendant discontinued as Plaintiff alleged. In fact, the only evidence Plaintiff submitted showing that he had been prescribed either of these medications before he was rearrested on September 9, 2015, is for Gabapentin which was filled just a week earlier, on September 2, 2015. (Doc. 67, p. 17.)

Plaintiff's opinion that Defendant should have prescribed Tramadol and Gabapentin for Plaintiff's arm pain do not suffice to create a triable issue of material fact to defeat Defendant's motion. Plaintiff fails to show anything more than a difference of opinion between himself and Defendant regarding his pain medications. This is insufficient meet Plaintiff's burden in opposing

---

[4] It is presumed that Plaintiff intended to write "Gabapentin" as this is the medication reflected on the one outside prescription Plaintiff submitted as evidence (Doc. 67, p. 17) and the Court can find no information to suggest that a pain medication called "Gabotine" exists.

11

a motion for summary judgment and does not even show violation of Plaintiff's rights under the Fourteenth Amendment, let alone the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 107 (1976). Before it can be said that a prisoner's civil rights have been abridged with regard to medical care, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir.1980) (citing *Estelle*, 429 U.S. at 105-06). *See also Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir.2004).

Drawing all inferences in the light most favorable to Plaintiff, *Comite de Jornaleros de Redondo Beach*, 657 F.3d at 942, the Court finds he has not met his burden of establishing that triable issues of fact exist regarding the medications Defendant prescribed for his painful arm in the first four months of 2016. Therefore, Defendant's motion for summary judgment should be **GRANTED**.

## 2. **Injunctive Relief**

Defendant also contends that, Plaintiff is currently a prisoner at High Desert State Prison. (Doc. 65, p. 14.) Plaintiff acknowledged in his deposition that he is no longer able to get injunctive relief given that he is no longer a detainee at Lerdo Max-Med and is no longer being cared for by Defendant. (Exh. A, 85:7-10; 88:7-19.) Accordingly, Defendant argues, any claim for injunctive relief must be dismissed.

The Findings and Recommendation for Plaintiff to proceed on his current claim against Defendant specifically found that "[a]mong other things, Plaintiff seeks to 'receive proper prescription medication.'" (Doc. 23, p. 6, (citing Doc. 20, p. 6).) The F&R noted that, as a threshold matter, Plaintiff must establish that he has standing to seek injunctive relief, *Summers v. Earth Island Institute*, 555 U.S. 488, 493-94 (2009); *Mayfield v. United States*, 599 F.3d 964, 969 (9th Cir. 2010), and that Plaintiff "must show that he is under threat of suffering an 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to challenged conduct of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury. *Summers*, 555 U.S. at 493 (citation and quotation marks omitted); *Mayfield*, 599 F.3d at 969." (*Id.*) Since Plaintiff's

medical care claims arise from events that occurred at Lerdo Max-Med, (*see* Doc. 20), and was, at the time the SAC was screened, housed at High Desert State Prison, (*see* Doc. 22), he lacked standing to seek relief directed to provide him specific medical treatment at HDSP. (Doc. 23, p. 6.) To the extent the SAC sought relief to obtain specific medical care while he was at Lerdo Max-Med, it had been rendered moot on his transfer to HDSP. *See Dilley v. Gunn*, 64 F.3d 1365, 1368 (9th Cir. 1995); *Johnson v. Moore*, 948 F.2d 517, 519 (9th Cir. 1991). It was recommended that Plaintiff's request for injunctive relief via access to specific prescriptive medications in the SAC be denied. (Doc. 23, pp. 6-7.) This recommendation was adopted in full. (Doc. 25.)

Subsequently, Plaintiff filed a separate motion which was construed as a motion for preliminary injunctive relief since it sought an order directing medical personnel to provide him pain medication -- 150 mg Tramadol and 1200 mg Gabapentin. (Doc. 33.) This motion was denied for the same reasons. (*See* Docs. 42, 58.) Thus, Defendant's motion on this issue should be disregarded as Plaintiff does not have a pending request for injunctive relief.

### B. <u>Plaintiff's Motion</u>

Prior to Defendant's filing of his motion for summary judgment, Plaintiff filed a document titled, "Motion Denying Summary Judgment - Settlement." (Doc. 64.) That motion, in its entirety states: "I Monico J. Quiroga, III, motion to deny summary judgment - settlement. I declare under penalty of perjury the foregoing is true and correct." (*Id.*, p. 1.) Attached to the motion is a letter, dated October 17, 2017, from defense counsel to Plaintiff offering to settle the action for $500.00, if Plaintiff signed and returned an enclosed stipulation to dismiss Dr. Hasta in exchange for the County of Kern, which would thereafter pay the settlement monies. (*Id.*, p. 2.) Plaintiff also enclosed a copy of the proposed stipulation, but he did not sign in the designated space. (*Id.*, pp. 3-4.)

Plaintiff does not indicate why he submitted these documents, or how he feels they provide basis to deny Defendant's motion. It may be that Plaintiff intended to accept the offer extended therein, but to do so, he was required by its terms to sign the stipulation and return it to defense counsel, not file a blank version with the court. It may, however, be that Plaintiff intended the filing of that motion to show that the County of Kern was somehow liable for

13

Defendant's actions, but Plaintiff provides neither explanation nor legal authority for any such conclusion and the Court finds none. Thus, Plaintiff's "Motion Denying Summary Judgment -- Settlement" should be **DENIED**.

## VI. Conclusions and Recommendations

As set forth herein, this Court finds that Defendant has shown that no dispute of material facts exists to grant his motion for summary judgment.

Accordingly, the Court **RECOMMENDS**:

(1) Defendant Dr. Hasta is entitled to judgment as a matter of law and his Motion for Summary Judgment, filed on December 8, 2017 (Doc. 65), should be **GRANTED**;

(2) Plaintiff's "Motion to Deny Summary Judgment Settlement," filed on October 30, 2017 (Doc. 64) should be **DENIED**; and

(3) judgment should be entered in Defendant's favor, against Plaintiff, and the action should be closed.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). **Within 14 days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **August 21, 2018**                    /s/ Jennifer L. Thurston
                                                                  UNITED STATES MAGISTRATE JUDGE